IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILLIAM BEDFORD, Individually, and as
Co-Executor of the Estate of Beverly Bedford, deceased and
KIM WADDLE, as Co-Executor of the Estate of
Beverly Bedford, deceased                                                               PLAINTIFF

V.                                                           CIVIL ACTION NO. 1:18-CV-175-GHD-DAS

AMERICAN HONDA MOTOR CO., INC.                                           DEFENDANT

## PROTECTIVE ORDER

This matter is before the court on the plaintiffs' motion *ore tenus* for a protective order to prohibit the defendant from taking the deposition of the plaintiff, William Bedford. A protective order to prohibit the taking of any deposition is an extraordinary remedy. An order to prohibit the taking of a party's deposition is an even more extraordinary remedy. For reasons set forth in detail below, the court finds this extraordinary remedy is appropriate because the plaintiff's serious health issues make the taking of his deposition a known serious risk to his health and life. Additionally, the defendant has been dilatory in seeking the deposition, waiting until the very end of discovery to seek this deposition. This tardiness of the defendant has limited both the plaintiff and the court in making a more complete record of the plaintiff's health issues and limited the court's time to determine if alternative remedies, short of prohibition, could be tailored. Both because of the risks to this plaintiff's health set out by his doctor, and because of the defendant's delay, the court orders that the deposition of the plaintiff, William Bedford, scheduled for December 20, 2019 not be had.

## PROCEDURAL AND FACTUAL BACKGROUND

This is a lawsuit for the wrongful death of Beverly Bedford, the wife of William Bedford and mother of his co-plaintiff, Kim Waddle. Beverly was diagnosed with mesothelioma and died

1

as a result of this cancer. The plaintiff and his wife owned and were employed with Honda of Tupelo. This action alleges that Beverly developed mesothelioma as a result of exposure at the business to the defendant's asbestos-containing products.

The plaintiffs filed this action on September 14, 2018. The initial case management order, entered January 15, 2019, set August 2, 2019 as the discovery deadline. The case was set for trial to begin April 6, 2020. Plaintiffs' counsel advised defense counsel early in the case they did not intend to call the plaintiff as a witness in this case because they believed he could not withstand the rigors of litigation. There have been discussions among counsel about the possibility of the plaintiff stipulating that Bedford would not testify at trial in lieu of taking of his deposition.

On May 17, 2019, the court granted the joint motion of the parties to extend the case management deadlines, extending the defendant's designation of experts to August 7, 2019, the discovery deadline to October 2, 2019, and the motions deadline to October 18, 2019. On July 26, 2019, the defendant noticed the deposition of the other named plaintiff, Kim Waddle, for August 21, 2019.

On September 30, 2019, the court entered an agreed order again extending the discovery and motions deadlines to November 22, 2019 and December 6, respectively. On October 3, 2019 the defendant served its interrogatories and requests for production of documents on the plaintiff, followed on October 11, 2019 with the plaintiff's service of a set of requests for admissions on the defendant.

The only previous discovery dispute brought to the attention of the court involved the defendant's desire to take the deposition of the plaintiff's experts. On November 13, the court, after a telephonic status conference, ordered that the defendant could take the expert's deposition

and *again* extended the deadline for completion of discovery to December 23, 2019, with motions to be filed not later than January 6, 2020.

On December 12, 2019, eleven months after the case management order was entered, the defendant filed a notice of the deposition of William Bedford, followed on December 16th with an amended order to correct an error as to the date. On Sunday December 15, 2019, plaintiffs' counsel obtained a letter from Dr. Richmond McCarty, William Bedford's treating physician. A copy of this letter is attached to this order as Exhibit A. The following day plaintiffs' counsel notified the court of an objection to taking this deposition, seeking the preliminary telephonic discovery dispute conference required by the case management order. Because the undersigned was in trial until December 18, the court heard from the parties on December 19.

The court has reviewed the letter from Dr. McCarty, who has been Bedford's primary care provider for almost ten years. Along with Bedford's cardiologist, McCarty has been managing Bedford medically. Bedford is 83 years old and has a history of coronary artery disease, labile hypertension, chronic obstructive pulmonary disease, generalized anxiety, and cervical degenerative joint disorder with cervicalgia. He also suffers from age-related physical problems. Between his anxiety and his labile hypertension, Bedford has had his blood pressure rise to stroke levels at times in the past. McCarty further notes that his anxiety problems have gotten worse since his wife's death. McCarty opined in his letter, to a reasonable degree of medical certainty, that Bedford is not physically able to sit for a deposition in excess of 30 minutes. Depending on his physical or mental state on any given day, Bedford, per McCarty, may not be able to tolerate even thirty minutes. McCarty does think Bedford may be able to offer competent testimony but is limited based on his physical condition. He expressed concern about the stress a deposition could have on his elderly patient.

ANALYSIS

Because of the broad scope of subject matter in depositions, an order that no deposition shall be taken of any witness is only entered in the most extraordinary circumstance. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (The trial court did not outright deny leave to take a deposition but required the plaintiff to first take depositions of defendant's designees who were said to have more direct knowledge.) An order prohibiting the taking of the deposition is both "unusual and unfavorable." *Investment Properties, International. Ltd. V. IOS Ltd.*, 459 F.2d. 705, 708 (2nd Cir. 1972) (Writ of mandamus granted to vacate order quashing deposition notices of defendant's representatives. Plaintiff had to be allowed discovery to establish standing and federal court jurisdiction.).

The standard for prohibiting a witness's deposition is high, but to prohibit the deposition of a party, the showing must be even more extraordinary. In *Grand Oaks v Anderson*, 175 F.R.D. 247 (N.D. Miss. 1997) a defendant sought to avoid being deposed, asserting his deteriorating physical and mental health. After a hearing, Judge Alexander found there was not sufficient proof that the defendant was cognitively impaired and ordered his appearance for the deposition, subject to "concerns" for his physical comfort. The statement from the physician only said that he was undergoing treatment with non-narcotic medications which "may" substantially affect his cognitive abilities. This court found this type of proof was not sufficient to bar the deposition.

Other courts have also refused to bar depositions where there is an allegation of lack of competency. Where competence, as opposed to physical debility, is at issue, the deposition may provide the proof on this issue, one way or the other, without placing the deponent at risk. *See Sauer v. Exelon Generation Co., LLC,* 280 F.R.D. 404 (N.D. Ill. March 5, 2010) (minor plaintiff,

a brain cancer survivor, could be deposed despite medical evidence showing she had difficulty with retention and retrieval of information as she might be able to testify in a meaningful fashion).

But the problem presented in this case is related not to a question of the witness's mental competence or lack thereof. In fact Dr. McCarty acknowledges that Bedford may have the mental acuity to deliver competent testimony. The issue raised by McCarty's letter is whether Bedford can physically withstand the rigors of a deposition. His letter puts the parties, counsel, and the court on notice that the doctor thinks Bedford's ability to sit for a deposition is a significant danger to his physical well-being.

Plaintiff's counsel has credibly asserted to the court that they would tender their client for depositions and call him at trial if they thought he could withstand the rigors of litigation. Counsel continues in their willingness not only to stipulate that Bedford will not be called as a witness, but that they will not have him present at trial. They have also offered to stipulate that the plaintiffs will not claim the decedent suffered indirect exposure through William Bedford's presence at Honda of Tupelo.

The defendant says that it seeks information about Bedford's damages in his loss of consortium claim and possibly testimony about Beverly having been indirectly exposed by William Bedford in past employment, household repairs, and his work on motorcycles at home. The defendants also argued they were unaware until the deposition of Ms. Waddle that Bedford may be mentally able to testify, and therefore did not pursue taking the deposition at an earlier date.

While not an ideal situation for either party, the court finds the medical opinion proffered by Dr. McCarty to be compelling and ultimately decisive on the issue of whether to allow the

noticed deposition. The court cannot allow this deposition in the face of medical opinion that doing so creates a substantial risk to his health and life.

Other courts faced with these dire circumstances have also refused to allow depositions. In *Frideres v. Schlitx*, 150 F.R.D. 153 (S.D. Iowa 1993), the court prohibited a deposition of the plaintiff's sister, when advised by doctor's affidavits that the stress of a deposition might prove fatal to her.

This court finds most compelling the decision in *In re McCorhill Publishing, Inc.*, 91 B.R. 223 (S.D. N.Y. 1988), both in its factual similarity and in that court's rationale. In *McCorhill*, in an adversary hearing, a creditor sought to depose the chairman of the board of the bankrupt company. The chairman was eighty years old and his mental condition had deteriorated to a vegetative state. The court, however, based its denial of the deposition on the chairman's physical condition. His doctor testified he had heart failure and the stress of a deposition was a direct threat to his life and could cause heart failure.

Between Bedford's hypertension and anxiety, McCarty states that just such a risk exists for Bedford, though in his case the risk is stroke. This court, like the New York court, is not prepared to assume the responsibility for subjecting Bedford to a life-threatening deposition. Should the court allow the deposition, and the worst occur, no "amount of apologies or statements of sorrow will compensate for the known risk, especially since the only medical testimony in this case reflects the fact that [Mr. Bedford's] life will be placed in jeopardy…." *Id.* at 225.

The defendant's delay in seeking to take this deposition plays a significant part in the court's decision. By the defense counsel's admissions in argument, they suspected that Bedford might be able to sit for a deposition not later than August of this year, when they took Mrs.

Waddle's deposition, but they waited to set his deposition on the very eve of the close of discovery—one business day before the deadline. At the very least, Dr. McCarty's letter would, at any stage of the litigation, be more than sufficient to sustain the plaintiff's initial burden of proof for a brief stay to allow time for the doctor to be brought before the court "to testify with regard to the protective order." *Medlin v. Andrew*, 113 F.R.D. 650 (M.D. N.C. 1987). Before granting the extraordinary relief of denying the deposition, the court would have preferred to conduct a hearing as was done in *Grand Oaks*. But defendant's delay in seeking this deposition has precluded this court further probing the doctor's opinion or a search for less extraordinary relief. There is simply no time; the discovery deadlines have already been extended three times; and no further extension can be made with an early April trial date.

With the uncontested medical opinion of a long-time treating physician of substantial risk to the life and health of this plaintiff, the court feels it must grant the protective order and prohibit the taking of the deposition of the plaintiff, William Bedford.

IT IS ORDERED as follows:

1. The *ore tenus* motion for a protective order is granted. The noticed deposition of the plaintiff, William Bedford shall not be taken.

2. Consistent with the stipulations proffered by plaintiffs' counsel after the court's oral ruling on the motion, as follows:

    a. The plaintiff, William Bedford, shall neither testify nor appear at the trial of this action;

    b. The plaintiffs shall make no claim or offer proof to suggest that Beverly Bedford was indirectly exposed to any of the defendant's asbestos containing products at Honda of Tupelo.

SO ORDERED this the 20th day of December, 2019.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE